| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| ---------------------------------------------------------------x<br>In re:                                                                      :<br>                                                                              :<br>Mifate Cab Corp.,                                                :<br>                                                                              :<br>                                                                              :<br>                                                        Debtor.   :<br>---------------------------------------------------------------x | Case No. 22-10665 (JLG)<br>Chapter 11<br><br>Jointly Administered |

# MEMORANDUM DECISION AND ORDER RESOLVING MOTION TO CONVERT AND GRANTING MOTION TO APPROVE COMPROMISE

**A P P E A R A N C E S:**

CHARLES N. PERSING
*Sub Chapter V Trustee, appearing pro se*
100 Passaic Avenue, Suite 310
Fairfield, New Jersey 07004


SAMUEL DAWIDOWICZ
*Class 2 Creditor, appearing pro se*
215 East 68th Street
New York, New York 10065


THE LAW OFFICE OF THOMAS A. FARINELLA, PC
*Attorneys for the Debtor*
260 Madison Avenue, 8th Floor
New York, New York 10016
By:    Thomas A. Farinella

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

In response to the Debtor's payment defaults under its confirmed Plan in this Subchapter V Case, the Trustee, a Plan beneficiary, filed a motion pursuant to section 1112(b) of the Bankruptcy Code to convert the case to a case under chapter 7 of the Bankruptcy Code (the "Motion to Convert").[2] The Debtor did not respond to the motion. The matter before the Court is the Debtor's motion (the "Rule 9019 Motion")[3] pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Rule 9019") seeking approval of a Settlement Agreement resolving the Motion to Convert and, with it, curing the Plan defaults.

On April 25, 2025, the Court conducted a hearing on the Rule 9019 Motion. The Trustee and Mr. Dawidowicz, another Plan beneficiary, appeared pro se. The Debtor was represented by counsel. For the reasons set forth herein, the Court approves the Settlement Agreement, subject to two conditions.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

---

[1] Capitalized terms have the meanings ascribed to them herein or under the Plan. References to "ECF No. __" are to documents filed of record in this Case No. 22-10665.

[2] *Motion to Convert Chapter 11 Case to Chapter 7*, ECF No. 112.

[3] *Motion to Approve Compromise*, ECF No. 117.

2

**BACKGROUND**

Mifate Cab Corp. (the "Debtor") is a New York corporation that operates a taxicab business. On May 26, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition"),[4] in which it elected to proceed as a small business debtor under subchapter V of chapter 11.[5] Petition ¶ 8 (the "Subchapter V Case"). On May 31, 2022, the United States Trustee appointed Charles N. Persing, to serve as the subchapter V trustee herein (the "Trustee").[6] The Debtor is a repeat filer. On January 6, 2021, the Debtor filed a chapter 11 petition under subchapter V in this Court (the "2021 Case"). In that case, Samuel Dawidowicz ("Mr. Dawidowicz") served as the Debtor's subchapter V trustee. The Debtor did not confirm a chapter 11 plan, and by order dated October 4, 2021, the Court dismissed the 2021 Case.[7]

The Debtor's assets consist principally of a yellow taxicab and a taxi medallion #5B61 (the "Medallion"). On the Petition Date, the Debtor valued those assets, in the aggregate, at $77,893.00. *See* Bankruptcy Schedules, Schedules A/B.[8] The Debtor lists New York Community Bank ("NYCB")[9] as a secured creditor in the principal amount of $743,367.89, secured by the Medallion worth $75,000.00. *See* Amended Schedule D.[10]

---

[4] *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1.

[5] Subchapter V of chapter 11 is codified in sections 1181-1195 of the Bankruptcy Code.

[6] *Notice of Appointment of Subchapter V Trustee*, ECF No. 3.

[7] *See In Re Mifate Cab Corp, Order Dismissing Chapter 11 Case*, No. 41 (Case No. 21-10018).

[8] *Bankruptcy Schedules, Schedule A/B*, ECF No. 1.

[9] The note and security agreement attached to NYCB's proof of claim states that the lender is "New York Commercial Bank." It appears New York Community Bank is the successor in interest to New York Commercial Bank.

[10] *Amended Bankruptcy Schedules, Schedule D*, ECF No. 20. NYCB filed a proof of claim in the amount of $970,177.16, asserting the value of its collateral is $145,261.19. *See* Claims Register, Claim No. 3-1.

3

**The Reorganization Plan**

On August 24, 2022, the Debtor filed a chapter 11, subchapter V Plan of Reorganization.[11] On June 7, 2023, the Debtor filed its chapter 11, subchapter V First Amended Plan of Reorganization.[12] On June 23, 2023, the Debtor filed its chapter 11, subchapter V Second Amended Plan of Reorganization (the "Plan").[13] On September 25, 2023, the Court entered an order confirming the Plan (the "Confirmation Order").[14]

The centerpiece of the Plan is the Court-authorized settlement agreement between NYCB and the Debtor (the "NYCB Settlement Agreement").[15] Under that agreement, NYCB accepted $200,000.00 in full satisfaction of its secured claim, payable, as follows: (i) $30,000.00 cash payment for the Debtor's benefit under New York City's Medallion Relief Enhancement Program, and (ii) the Debtor's execution of a $170,000.00 note. In giving effect to the NYCB Settlement Agreement, the Plan calls for the Debtor to retain the Medallion, and to make monthly payments of $1,234.25 to NYCB. Plan § 2.01.

The Plan provides that the Trustee and Mr. Dawidowicz hold allowed claims against the Debtor in the sums of $25,748.90 (the "Trustee Claim") and $7,975.00 (the "Dawidowicz Claim"), respectively. *See* Plan §§ 2.02, 3.02. The Plan calls for the Debtor to pay the Trustee Claim in full

---

[11] *Debtor's Subchapter V Chapter 11 Plan*, ECF No. 24.

[12] *Debtor's [First Amended] Subchapter V Chapter 11 Plan*, ECF No. 62.

[13] *Debtor's [Second Amended] Subchapter V Chapter 11 Plan*, ECF No. 66.

[14] *Order Confirming Debtor's Consensual Amended Plan of Reorganization for Small Business Under Subchapter V of Chapter 11 Plan [sic]*, ECF No. 80.

[15] *See Motion for an Order Approving the Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Between the Debtor and the Creditor*, ECF No. 52; *Order Pursuant to Federal Rule of Bankruptcy Procedure 9019(a) Approving Settlement Agreement*, ECF No. 60.

on the Effective Date,[16] in cash, or upon such other terms as may be agreed upon by the claim holder and the Debtor. *Id.* § 3.02.[17] It provides for the Debtor to pay the Dawidowicz Claim in full through equal monthly installments of $250.00 over thirty-two (32) months, commencing on the Effective Date. *Id.* § 2.02. Mr. Dawidowicz consented to that treatment. *Id.*

Without the Trustee's assistance, the Debtor could not have reached the NYCB Settlement Agreement and confirmed a reorganization plan. The record is clear that the Trustee played an active role in the negotiation and execution of the NYCB Settlement Agreement, and the filing and confirmation of the Plan. On December 14, 2023, the Debtor filed a notice that (i) Plan's Effective Date was December 1, 2023, and (ii) that the Plan has been substantially consummated within the meaning of section 1101(2) of the Bankruptcy Code.[18]

**The Debtor's Default Under The Plan**

On March 7, 2024, the Court entered an order granting the Trustee's application for allowance of final compensation and reimbursement of expenses in the amounts of $25,466.50 and $282.40, respectively, for services rendered and expenses incurred by the Trustee during the period from May 31, 2022, through January 3, 2024 (the "Fee Order").[19] The Debtor did not respond to the Trustee's fee application. There were no objections to the fee application.

---

[16] The Effective Date is defined in the Plan as "the first business day following the date that is 14 days after the entry of the confirmation order." Plan § 8.02.

[17] The Plan includes a fee estimate of $12,500.00. *See* Plan at § 3.02.

[18] *Notice of: (1) Occurrence of Effective Date; and (2) Substantial Consummation of the Small Business Subchapter V Plan of Reorganization Pursuant to 11 U.S.C. § 1183 (C) (2)*, ECF No. 86.

[19] *Order Granting Application for Allowance of Final Compensation and Reimbursement of Expenses*, ECF No. 91.

5

The Debtor defaulted under the Plan and Fee Order. By letter dated June 18, 2024,[20] the Trustee requested a status conference, and explained that he had received a partial payment of $6,000.00, on account of the Trustee Claim, leaving a balance of $19,748.90 outstanding. The Trustee further noted that the Debtor's principal had indicated that he was unaware of the Debtor's obligation under the Plan and Fee Order to make further payments on account of the Trustee Claim, and that the Debtor's counsel had been unresponsive to his inquiries regarding the payment defaults under the Plan. On June 26, 2024, Mr. Dawidowicz, filed a letter with the Court echoing the Trustee's request for a status conference.[21] Mr. Dawidowicz advised that he too had not received payments called for under the Plan on account of the Dawidowicz Claim.

**The Trustee's Efforts To Resolve The Plan Defaults**

The Debtor did not respond to the letters. The Court entered orders directing the Debtor to pay all outstanding amounts then due and owing to the Trustee and Mr. Dawidowicz under the Plan on or before July 19, 2024.[22] The Court further directed that if the Debtor failed to comply with that order, the Debtor must appear in Court on July 24, 2024, and show cause why the Court should not convert the case to a case under chapter 7 of the Bankruptcy Code. The Court directed the Debtor to file any responsive papers on or before July 22, 2024.

On July 23, 2024, the Debtor's counsel, with consent of the Trustee and Mr. Dawidowicz, requested an adjournment of the hearing.[23] The Court granted the request and rescheduled the show

---

[20] *Letter for Status Conference*, ECF No. 92.

[21] *Letter Filed by Samuel Dawidowicz*, ECF No. 93.

[22] *Memorandum Endorsed Orders*, ECF No. 94, 95.

[23] *Letter Requesting an Adjournment*, ECF No. 96.

6

cause hearing to August 21, 2024, with responsive papers, if any, to be filed on or before August 14, 2024.[24] The Debtor did not file any responsive papers.

On August 21, 2024, the Court held a status conference. At that time, the Court acceded to the parties' requests to adjourn the conference to give the Debtor additional time resolve the Plan defaults. The Court adjourned the conference to September 10, 2024, and directed that on or before September 4, 2024, the Debtor would (i) file with the Court stipulations with the Trustee and Mr. Dawidowicz resolving the Debtor's defaults under the Plan, and (ii) file with the Court an accounting of the payments made in accordance with the Plan.[25]

On September 9, 2024, the Debtor's counsel filed a proposed stipulation addressing its obligations under the Plan to various creditors, including the Trustee and Mr. Dawidowicz (the "Proposed Stipulation").[26] On September 10, 2024, the Court held a hearing on the Proposed Stipulation. At that time, the Debtor's counsel reported that the Debtor's principal rejected the stipulation and, as such, the Debtor would not seek approval of the Proposed Stipulation. With the consent of all parties, the Court adjourned the case conference to November 13, 2024, and directed the Debtor to serve and file with the Court a proposal approved by the Debtor's principal to address the payment defaults under the Plan on or before November 4, 2024.[27]

By letter dated November 7, 2024, the Debtor's counsel advised that he could not communicate with the Debtor's principal and, as such, was not able to formulate a proposal for

---

[24] *Memorandum Endorsed Order*, ECF No. 97.

[25] *Minutes of Proceedings*, ECF No. 98.

[26] *[Proposed] Stipulation to Pay Subchapter V Trustee Fees*, ECF No. 102. In this Proposed Stipulation, the Reorganized Debtor had agreed to commence payments on October 1, 2024.

[27] *Minutes of Proceedings*, ECF No. 103.

7

curing the Debtor's defaults under the Plan.[28] He requested an adjournment of the November 13 case conference. The Court granted the request and adjourned the case conference to December 12, 2024. The Court directed the Debtor to serve and file with the Court a proposal to address the payment defaults under the Plan on or before December 5, 2024 (the "November 8 Order").[29]

The Debtor failed to comply with the November 8 Order. In a letter dated December 5, 2024,[30] and a "status report" dated December 9, 2024 (the "December 9 Status Report"),[31] the Debtor requested an extension of the December 5 deadline in the Court's November 8 Order. Among other things, in the status report, the Debtor's counsel advised that

> The parties are working out the details on a new proposal. It is respectfully requested that the Court extends the deadline to provide the proposal to the Court. Additionally, with the consent of the trustee's it is respectfully requested that the matter scheduled for December 12, 2024 at 10:00AM [sic] be adjourned. I have conferred with the Reorganized Debtor, Mr. Pershing and Mr. Dawidowicz and we are attempting to finalize an agreement. The Subchapter V Trustee's [sic] do not object to this request.

December 9 Status Report, at 1.

At the December 12, 2024, case conference, the Court adjourned the conference to January 29, 2025 (the "December 12 Order").[32] The Court directed the Debtor, on or before January 22, 2025, to serve and file a proposed agreement among the Debtor, the Trustee, Mr. Dawidowicz, and any other parties, as necessary, to cure the payment defaults under the Plan. *Id.* The order

---

[28] *Letter Requesting Adjournment*, ECF No. 105.

[29] *Memorandum Endorsed Order*, ECF No. 106.

[30] *Letter*, ECF No. 107.

[31] *Status Report and Request to Adjourn*, ECF No. 108.

[32] *Minutes of Proceedings*, ECF No. 110.

granted the Trustee leave to file a motion to convert Subchapter V Case, if the Debtor failed to comply with the December 12 Order.[33]

**Motion To Convert Subchapter V Case**

The Debtor did not comply with the December 12 Order. On February 7, 2025, the Trustee filed the Motion to Convert. Briefly, in support of the motion, the Trustee argued that the Debtor's failure to pay the Trustee Claim, in full, and to make payments on account of the Dawidowicz Claim constitute material defaults under the Plan and "cause" to convert the Subchapter V Case under section 1112(b)(4)(N) of the Bankruptcy Code.[34] Motion to Convert at 1. The Motion to Convert plainly stated a claim for relief against the Debtor. The Debtor did not respond to the motion.

**The Rule 9019 Motion**

On March 3, 2025, the Debtor filed letters with the Court requesting an adjournment of the hearing on the Motion to Convert, and leave to file the Rule 9019 Motion to approve a proposed compromise resolving the motion and, with it, the Debtor's defaults under the Plan.[35] The Court granted the request.[36]

On March 12, 2025, the Debtor filed the Rule 9019 Motion. The Stipulation of Settlement (the Settlement Agreement"), outlines a payment plan to address the amounts due and owing to

---

[33] *See also Minutes of Proceedings*, ECF No. 111.

[34] Section 1112(b)(4) states, as follows: "For purposes of this subsection, the term 'cause' includes . . . (N) material default by the debtor with respect to a confirmed plan." Generally, under section 1112(b)(1), once cause is established, the court shall convert a case under chapter 11 to a case under chapter 7 or dismiss it, whichever is in the best interests of creditors and the estate, unless the court determines that the appointment of a trustee or examiner is in the best interests of creditors and the estate.

[35] *Letter Requesting an Adjournment and Leave to File the Motion for 9019,* ECF No. 114*; Amended Letter Requesting an Adjournment and Leave to File the Motion for 9019*, ECF No. 115.

[36] *Memorandum Endorsed Order*, ECF No. 116.

9

the Trustee and Mr. Dawidowicz, respectively, under the Plan.[37] The Settlement Agreement calls for the Debtor to make forty-seven (47) equal monthly payments of $600.00, commencing on March 1, 2025. Of each payment, $420.19 will be allocated to the Trustee and $169.75 will be directed to Mr. Dawidowicz.[38] The total payments will amount to $28,200.00 ($600.00 × 47), with approximately $19,748.93 going to the Trustee and $7,978.25 to Mr. Dawidowicz. These figures align[39] with the amounts previously approved by the Court: $19,748.90 for the Trustee (after accounting for $6,000.00 that the Debtor already paid) and $7,975.00 for Mr. Dawidowicz. The Debtor also maintains that it is current with its Class 1 creditor (New York Community Bank) and has satisfied its obligations to the Class 3 creditor (Mega Funding Corp.).[40] At the hearing on the motion, the Trustee and Mr. Dawidowicz confirmed their support for the settlement. However, they advised the Court that the Debtor failed to make the March 1, 2025 and April 1, 2025 payments called for under the Settlement Agreement. They asked the Court to condition its approval of the Settlement Agreement on Debtor's faithful performance under the Agreement. Debtor's counsel did not oppose the request.

## LEGAL PRINCIPLES

Bankruptcy Rule 9019 grants the bankruptcy court authority to approve the settlement of legitimate disputes in bankruptcy cases. As relevant it provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr.

---

[37] *Stipulation of Settlement*, ECF No. 117, Ex. A.

[38] The Settlement Agreement contains a clerical error by referencing October 1, 2024, as a commencement date for payments to Mr. Dawidowicz. This date was carried over from the previously unimplemented Proposed Stipulation. The executed Settlement Agreement clearly establishes March 1, 2025 as the commencement date for all payments under the new payment plan. Rule 9019 Motion ¶ 5.

[39] The Court interprets the payment amounts to be estimations that will result in full payment of the outstanding amount owed.

[40] Rule 9019 Motion, p. 4-5.

P. 9019(a). To grant relief under Rule 9019, the Court must find that the settlement "is fair and equitable and in the best interests of the estate." *In re Charter Commc'ns*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009) (citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968)). The settlement proponent bears the burden of persuading the Court that the settlement is in the best interests of the estate. *In re MF Glob. Inc.*, No. 11-2790, 2012 WL 3242533, at *6 (Bankr. S.D.N.Y. Aug. 10, 2012).

In considering whether to approve a proposed settlement, a court must canvass the issues and make an independent evaluation of the reasonableness of the settlement. *Id.* at *5. A court does not need to conduct a mini trial of the underlying claims and issues. *Id.; see also In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 225 (Bankr. S.D.N.Y. 2007). Rather, a court "need only be apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment." *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640-41 (Bankr. S.D.N.Y. 2012) (citation and internal quotation marks omitted). "In evaluating the necessary facts, a court may rely on the opinion of the debtor, parties to the settlement and the professionals." *Id.* (citations omitted). While the court may give weight to the debtor's opinion that the settlement is fair and equitable, it may not simply adopt the debtor's position without making its own independent inquiry. *In re Soup Kitchen Int'l Inc.*, 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014); *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009) ("A court may not simply defer to a debtor in possession's judgment, but must independently evaluate the reasonableness of the settlement.").

The Second Circuit has outlined seven interrelated factors (the "*Iridium* Factors") for courts to consider when evaluating whether to approve a settlement:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;

11

(2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

(3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

(4) whether other parties in interest support the settlement;

(5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;

(6) the nature and breadth of releases to be obtained by officers and directors; and

(7) the extent to which the settlement is the product of arm's length bargaining.

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) (internal quotation marks omitted).

To be approved, the settlement need not reflect the best deal that the debtor could have obtained. *In re Adelphia Commc'ns Corp.*, 368 B.R. at 225; *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("a judge does not have to be convinced that the settlement is the best possible compromise or that the parties have maximized their recovery"). Rather, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion. *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Instead of focusing on a precise measurement of likely outcomes, a court should canvass the settled issues to see whether the settlement falls below the lowest point in the range of reasonableness. *In re Adelphia Commc'ns Corp.*, 368 B.R. at 225; *see also In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (holding that the settlement need not result in the best

possible outcome for the debtor but rather that it must not "fall below the lowest point in the range of reasonableness").

## ANALYSIS

**Application Of The *Iridium* Factors**

The Settlement Agreement resolves the Motion to Convert and, with that, it implements the Plan by resolving the defaults under the Plan. The agreement satisfies each of the relevant *Iridium* factors.

First, the balance between litigation's possibility of success and the Settlement Agreement's future benefits strongly favors approval. To defend against the Motion to Convert, the Debtor would be required to cure the Plan defaults and demonstrate that it can perform under the Plan, as confirmed. To cure the defaults, the Debtor would be required to make lump sum payments of $19,748.90 to the Trustee and catch up his payments with Mr. Dawidowicz, respectively. It appears the Debtor lacks the financial resources to make those payments. The Settlement Agreement benefits the estate by providing for the resolution of the Plan defaults pursuant to a payment program that preserves the structure of the Plan, while providing the Debtor additional time to satisfy the Trustee's and Mr. Dawidowicz's claims under the Plan. The future benefits of the Settlement Agreement clearly outweigh the likelihood of successful litigation. *In re Celsius Network LLC,* No. 22-10964 (MG), 2024 WL 4394507, at *11 (Bankr. S.D.N.Y. Oct. 3, 2024) ("*Celsius*") ("The [s]ettlement's future benefits are clear and evident—it provides an immediate and certain resolution of the dispute with the [creditors], avoids further delayed distributions to [creditors], and facilitates implementation of the [p]lan.")

Second, absent the Settlement Agreement, the Trustee would pursue the Motion to Convert, leading to further litigation that would potentially deplete estate resources. As noted, the Debtor

13

has not responded to the Motion to Convert, and the it appears that the Debtor cannot cure the Plan defaults. The settlement avoids this litigation.

Third, the Settlement Agreement serves the interests of creditors by establishing a payment structure that better aligns with the Debtor's financial capacity to pay its creditors. Under the Plan, the Trustee was entitled to payment of the Trustee Claim in full on the Effective Date, and Mr. Dawidowicz was to receive monthly payments of $250.00 over thirty-two (32) months. Plan §§ 2.02, 3.02. The Debtor failed to meet these obligations as it only paid $6,000.00 to the Trustee and made no payments to Mr. Dawidowicz. *See* Motion to Convert at 5. The Settlement Agreement relieves the Debtor of its obligation to make a lump sum payment in satisfaction of the Trustee Claim in favor of a combined monthly payment obligation of $600.00 ($420.19 to the Trustee and $169.75 to Mr. Dawidowicz) spread over forty-seven (47) months. Settlement Agreement at 2. This increases the likelihood that the Debtor can maintain consistent payments, which benefits all creditors by allowing the reorganization to proceed without the threat of a forced liquidation. The $600.00 monthly payment represents a more manageable financial obligation for the Debtor than the immediate payment of approximately $20,000.00 to the Trustee, plus catching up already missed $250.00 monthly payments to Mr. Dawidowicz as originally required.

Fourth, the parties directly affected by the Settlement Agreement—the Trustee and Mr. Dawidowicz—support its terms, as evidenced by their support of the Settlement Agreement. No party-in-interest has responded to the motion.

Fifth, the competency and experience of the professionals support approval. The Court previously recognized that the Trustee was instrumental in the resolution of the NYCB Settlement Agreement, and the filing and confirmation of the Plan. The extensive case history demonstrates

the Trustee's familiarity with the Debtor's financial constraints and the importance of resolving the administrative claim defaults.

Sixth, the Settlement Agreement contains no releases of officers or directors. It narrowly addresses the payment defaults under the Plan, with the consent of the affected parties. Settlement Agreement at 2-3.

Seventh, the Settlement Agreement is the product of arm's-length bargaining, as demonstrated by the extensive efforts over several months to resolve the payment defaults under the Plan, including multiple status conferences and Court orders summarized herein. The Trustee's willingness to pursue conversion absent a satisfactory resolution confirms the Settlement Agreement represents a genuine compromise among the parties, rather than a one-sided arrangement.

The Settlement Agreement therefore satisfies all *Iridium* factors and warrants approval.

**Implementation Of The Plan Through Settlement**

The Settlement Agreement addresses the Debtor's payment defaults under the Plan in a fashion that adheres to, and does not alter or modify, relevant provisions of the Plan. In *Celsius*, the court addressed whether a settlement constituted a modification of a confirmed plan. *Celsius*, 2024 WL 4394507 at *1. There, the debtors sought approval of a settlement regarding cryptocurrency distributions to corporate creditors. *Id.* Under the confirmed plan, individual creditors received distributions in cryptocurrency (referred to as "Liquid Cryptocurrency"), but the debtors limited cryptocurrency distributions to only the 100 largest corporate creditors who elected to receive such distributions. *Id.* at *2. All remaining corporate creditors were scheduled to receive cash distributions instead of Liquid Cryptocurrency. *Id.* at *3. This limitation was based on the

15

debtors' determination that no distribution agent was available to make Liquid Cryptocurrency distributions to more than 100 corporate creditors within the timeframe required. *Id.* at *9.

Subsequently, corporate creditors who had received cash instead of cryptocurrency filed motions seeking to receive Liquid Cryptocurrency distributions. *Id.* at *3-4. The settlement there proposed providing all eligible corporate creditors with "the Liquid Cryptocurrency (or its equivalent current value) that they would have received if they were initially scheduled for a Liquid Cryptocurrency distribution." *Id.* at *1. This was an issue because the value of cryptocurrency had appreciated since the original distribution date, meaning those who received Liquid Cryptocurrency benefited from this appreciation while those who received cash did not. *Id.* at *10.

The United States Trustee (the "UST") objected to the settlement, arguing it impermissibly modified the substantially consummated plan in violation of section 1127(b) of the Bankruptcy Code. *Id.* at *6. Specifically, the UST contended that the supplemental distributions and associated costs would be funded from "[p]lan reserves that are finite and earmarked for distribution to other creditors." *Id.* A pro se creditor also argued this settlement would adversely impact non-corporate creditors by reducing the pool of assets available for future distributions to them. *Id.*

The court rejected these arguments, finding the settlement was "an implementation, not modification, of the [p]lan." *Id.* at *8. The court reasoned that "rather than modifying the [p]lan, the [s]ettlement is merely providing [c]orporate [c]reditors what they would have been entitled to under the [p]lan had they originally been scheduled for a Liquid Cryptocurrency distribution on the [e]ffective [d]ate." *Id.* at *9. The court emphasized that the settlement did not negatively impact other creditors because the distributions would be funded in accordance with the terms of the plan, using reserves that were specifically established for resolving disputes regarding claims and distributions. *Id.* at *10. The court noted that "no creditors will receive less, in total, than they

16

would otherwise have been entitled to under the [p]lan; the [s]ettlement merely seeks to make a supplemental distribution to [e]ligible [c]orporate [c]reditors to ensure they receive the value of what they were originally entitled to under the [p]lan." *Id.*

Here, as in *Celsius*, the Settlement Agreement implements rather than modifies the Plan. The Plan explicitly provides that the Trustee Claim will be paid "in full on the Effective Date, in cash, or upon such other terms as may be agreed upon by the claim holder and the Debtor." Plan § 3.02. The settlement represents such an agreement on "other terms" as contemplated by the Plan.

While the Plan did not include similar language regarding the Dawidowicz Claim, the Settlement Agreement nevertheless implements the Plan's objective of paying this claim in full in equal monthly payments. The Plan contained no specific provisions addressing what would happen in the event of default, yet the Debtor's inability to make the required payments created a situation requiring resolution to prevent conversion and liquidation. The Settlement Agreement resolves this issue by establishing a payment schedule to which Mr. Dawidowicz has consented.

The court in *Celsius* found that "the [s]ettlement is simply giving [c]orporate [c]reditors the value that individual creditors received under the Plan," and that "all creditors entitled to receive [u]nsecured [c]laim [d]istribution [c]onsideration will have received, in the aggregate, their [p]ro [r]ata share of the [d]ebtors' assets eligible for distribution." *Celsius*, 2024 WL 4394507, at *10. The court emphasized that "no creditors will receive less, in total, than they would otherwise have been entitled to under the [p]lan." *Id.*

Similarly, the Settlement Agreement preserves the substantive rights of the Trustee and Mr. Dawidowicz to receive full payment of their allowed claims, while adjusting only the timing and structure of payments. The Trustee will still be paid $25,748.90 in total on account of the Trustee Claim, and Mr. Dawidowicz will still be paid $7,975.00 on account of the Dawidowicz

17

Claim. Settlement Agreement at 2. No creditors will receive less than they are entitled to under the Plan. The settlement simply establishes a payment schedule that accommodates the Debtor's financial constraints while ensuring full payment to these claimants. In this way, the settlement implements the Plan's provisions by creating a mechanism to fulfill its payment obligations after the Debtor's default.

## CONCLUSION

For the reasons set forth herein, the Court grants the Rule 9019 Motion, subject to the following conditions:

1. The Debtor shall become current under the Settlement Agreement by May 5, 2025, by making all monthly payments due on March 1, April 1, and May 1, 2025.

2. In the event the Debtor fails to make timely payments as required under the Settlement Agreement, the Trustee or Mr. Dawidowicz may settle an order to convert the case to one under chapter 7 of the Bankruptcy Code on ten (10) calendar days' notice to the Debtor and Debtor's counsel, supported by an affidavit establishing such default.

IT IS SO ORDERED.

Dated: April 26, 2025
New York, New York

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge